## Eugene Dietzgen Co., Inc., et al. v. Harrisburg Foundry and Machine Works.

*Corporations—Receivership—Receivers' certificates—Manufacturing plant—Operation by receiver.*

1. A court has no power to issue receivers' certificates where the operation of the business is that of an individual or private corporation, except for the preservation of the property or completion of contracts in process of manufacture.

2. Where a manufacturing business appears to have been conducted at a very heavy loss for three years, resulting in a receivership, the court has no authority to issue receivers' certificates as a first lien, payable "prion to any of the existing liens" on the property, in order that the receiver may carry on the business.

3. The purpose of the court's taking over the property is to protect all who have claims thereon, and not to create new liabilities that would probably embarrass the ascertainment of the rights of those who should be protected.

4. In the case of a private corporation, the court cannot authorize the issuance of receivers' certificates for the purpose of improving, adding to, or carrying on, the business of the company without first having the consent of creditors whose liens would be affected thereby.

Petition for authority to issue receivers' certificates. C. P. Dauphin Co., Equity Docket, 1923, No. 755.

*Job J. Conklin,* for petitioners.

WICKERSHAM, J., Sept. 20, 1923.—Christian W. Lynch, appointed by this court as receiver of the above stated defendant corporation, presented his petition, setting forth, *inter alia*, that since taking charge of the assets of said defendant company he has found it is practically without any cash or work-

4 D. & C.

ing capital; that he is directed by this court to complete the contracts now on hand, convert the raw material into cash, and take such new contracts as he deems necessary and proper to keep the plant in operation, and conserve the assets; that in order to carry out said order of court, it will be necessary for him to keep the plant in operation on practically the same basis that it has been operated for the past few months, which will necessitate the employment of several hundred mechanics and the purchase of material and supplies needed to complete the contracts now in the course of construction; that the weekly pay-roll of the defendant corporation is approximately $6000; that there is no cash coming into his hands as receiver from outstanding accounts, for the reason that practically all of the collectible accounts, so far as the petitioner can learn, were assigned by the officers of the defendant company for the purpose of raising cash to operate the plant prior to the appointment of a receiver, and that the receiver has no other source from which he can collect cash to operate the plant unless he dispose of some of the assets of the company; that he has no contract completed at present on which there is any money due which he could collect and use for future operation; that large sums of money are tied up in contracts which, if completed by additional labor and material, would net the receiver large sums of money and large profits, and that the failure to complete these contracts would result in a loss to the receiver and to the stockholders and creditors of the defendant company.

The prayer of the petition is "for authority to issue a series of receiver's certificates in such amount and at such times as he finds it necessary to raise cash to meet pay-rolls, purchase material and pay other expenses incidental to the operation of the plant, the total of said certificates at no time to exceed the sum of $50,000, each certificate to be in the denomination of $100, with interest at 6 per cent. per annum; said receiver's certificates shall be a first lien on all the property and franchises of the defendant, Harrisburg Foundry and Machine Works, and may be redeemed by the receiver at his option at any time out of the net income and revenue of the defendant, Harrisburg Foundry and Machine Works, or, in any event, shall be payable out of the proceeds of the sale of the property of said defendant prior to the payment of any of the existing liens against the Harrisburg Foundry and Machine Works."

It is in said petition certified that the appraised value of the real estate and plant of the defendant company is $500,000, and that it is encumbered by a first mortgage of $93,000, a second mortgage of $100,000, and a refunding mortgage of $100,000.

Upon receipt of this petition, we directed notice to be given of the time of hearing testimony in support thereof to all of the bondholders and lien creditors whose names and addresses can be ascertained by personal service, also publication to be made daily in the Harrisburg Telegraph and Evening News up to and including Thursday, Sept. 13th, and in The Patriot up to and including Friday, Sept. 14, 1923, hearing to be had on Friday, Sept. 14th, at ten o'clock A. M.

From the records in this case and from the testimony taken at the two hearings held Sept. 14th and Sept. 18, 1923, it appears that this company has been doing business the past three years at a very heavy loss, resulting eventually in the present receivership. This loss in the first seven months in the year 1923 amounted to $30,000, and the receiver could not assure the court that the business could be conducted at a profit in the near future. The company must pay cash for all materials purchased. It has expended considerable sums upon two contracts in the City of Baltimore, one with the Chesa-

peake Paperboard Company, the other with the Belvidere Hotel. The total amount the company hopes to receive from these two contracts is $82,336.64, and it will require a very considerable amount of money to complete these contracts. The defendant company has assigned these contracts to the Manufacturers Finance Company of Baltimore for a loan of slightly over $19,000. These are performance contracts; that is to say, the machinery was sold and is being manufactured upon the guarantee that its use in each case will result in a very considerable saving in the overhead expenses of the purchaser; therefore, if the machinery, when completed, does not comply with the guarantee, the purchaser will probably not be required to receive and pay for it, which will result in a total loss. Even if the machinery performs as it is guaranteed to do in the contracts, the payment therefor is to be made in instalments covering a period of many months.

It further appears from the testimony that a very important and profitable part of the business of this corporation consists in carrying on its repair work, and this, we understand, from month to month is new business and not business in process of completion. We notice in the statement prepared and offered in evidence by the treasurer of the defendant company that it expects to realize from the repair work approximately $51,000, and we are advised by the receiver that without this department of the activities of the company the business could not be successfully and profitably carried on. While the receiver hoped that the sum of $50,000, which is proposed to be raised by the receivers' certificates, the issuance of which we are requested to authorize, might tide the company over without a request for further advances, he could, however, give the court no assurance that an additional sum of money might not in the future be necessary, or that he can sell said certificates at par, or realize the amount of the face value thereof as collateral security.

We are of the opinion, therefore, that under the facts and circumstances, as they are made to appear from the petition and the evidence, we are without authority to authorize the receiver to issue receivers' certificates "which shall be a first lien on all the property and franchise of the defendant corporation, payable, in any event, out of the proceeds of the sale of the property of said defendant, prior to the payment of any of the existing liens against it."

The proposition now made is not to do something exclusively essential to the preservation of the property or to only fabricate the material now on hand as the most profitable way of realizing its value for purposes of the receivership. Substantially, it is to authorize the receiver to embark in the business of the defendant company—subordinating the interests of those who had accrued rights against the company at the time of the creation of the receivership to the interests of those who shall hereafter deal with the receiver in making the new contracts. The proper subject of the court's taking over the property is with a view of protecting all who then had a claim thereon, and not with a view of the creation of new liabilities that would probably embarrass the ascertainment of the rights of those who should be protected. Only such things should be done with the property in the receiver's hands as look to its preservation, or to a realizing of its pecuniary value so as to thereby better subserve the purpose of the receivership in the adjustment of the claims of those who have an accrued interest therein. Have we authority to authorize the receiver to hazard the security of those in whose behalf he holds the property by entering on the proposed enterprise?

There is no absolute certainty that the receiver will be able, by the expenditure of the sums of money necessary to complete the two Baltimore contracts, to realize upon the contracts the amounts of money expended thereon. If the

4 D. & C.

Eugene Dietzgen Co., Inc., et al. v. Harrisburg Foundry and Machine Works.

company is not able to comply with its warranty in each contract, it is likely the entire amount invested and to be invested therein will be lost to the company and the creditors. We do not think we should authorize the receiver to embark upon such an uncertain undertaking, nor do we think we have the power to authorize him to purchase material and employ workmen to engage in the repair business of the corporation, which we understand to be necessary in order that it may be kept as a going concern.

In the operation of a business of private corporations, an attempt has been made in some cases to apply the rule which permits a court operating a railroad to incur indebtedness for carrying on the business, and to make it a paramount lien upon the *corpus* of the property, superior to that of prior lienholders, without their consent. That rule is not applicable to the continuance of the business of individuals and private corporations. A court has no power to issue receivers' certificates where the operation of the business is that of an individual or private corporation, except for the preservation of property or completion of contracts in process of manufacture.

The proper administration of the affairs of this corporation fixes our attention on the status of things as they existed at the creation of the receivership, and the rights of persons as they then were, to a dealing with the property in such a way as to subserve those existing rights, to a preservation of the property while these rights are being worked out, and not at all to the keeping of the business of a merely private corporation as a going concern. The public has no interest in this company's business being kept going—for it is discharging no duty to the public. Therefore, the subjecting of the receivership to the hazards of continued operation is unwarranted. That is not a mode of preservation or a mode of realization for the purposes of proper administration: Jones & Laughlin Steel Co. v. Noelke-Richards Iron Works, 23 Dist. R. 828, and cases therein cited.

"The principles on which the doctrine regarding quasi-public corporations rests have no application whatever to private corporations which owe no duty to the public. In the case of a private corporation, the court cannot authorize the issuance of receivers' certificates for the purpose of improving, adding to, or carrying on the business of the company without first having the consent of creditors whose liens would be affected thereby. . . . The State courts also are quite uniform in their enunciation of, and adherence to, the doctrine that no priority can be given in the case of the certificates of a receiver of a purely private corporation. According to a number of decisions, there is one circumstance which will justify a court in authorizing the issuance of receivers' certificates in the case of a private corporation and displacing prior liens thereby. In a case in which the money is required, not for the purpose of operating the business, but for the purpose of saving the property from destruction, the authority exists. There are cases, however, wherein the right to issue certificates has been denied to private corporations, although the money was needed for the preservation of the property:" 23 Ruling Case Law, § 96, page 88.

Inasmuch as it appears from the petition and the evidence in this case that the money derived from the sale of receivers' certificates is to be used, at least in part, in carrying on the repair business of the corporation, and for the purpose of continuing the corporation as a going concern, we are without authority to authorize the issuance of receivers' certificates as prayed for, and the prayer of the receiver for such authority must be refused.

From Sidney E. Friedman, Harrisburg, Pa.